**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 18-101-06 |
| | : | |
| MITCHELL WHITE | : | |

**DEFENDANT MITCHELL WHITE'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANT FROM TAKING A POSITION DURING TRIAL THAT CONTRADICTS HIS PROFFER STATEMENTS (Dkt. 382)**

Defendant Mitchell White and counsel have no intention of breaching his proffer agreement during trial. Any government suggestion of a breach during trial should be viewed with extreme care and caution. An overbroad interpretation of the agreement's waiver provisions and/or any over-restrictive limitation on counsel would implicate Mr. White's Fifth and Sixth Amendment rights, including his Fifth Amendment Due Process rights, his Fifth Amendment right not to be a witness against himself, and his Sixth Amendment right to effective assistance of counsel.

The government's analysis in its Motion to Preclude (Dkt. 382) is flawed in numerous ways. First, in contending that the agreement could be breached through cross-examination or the elicitation of testimony, the government relies on cases interpreting proffer agreements with waiver provisions much broader than the agreement at hand. A proffer agreement must be interpreted by its terms. Mr. White's proffer agreement provides for a waiver of the proffer protections only if Mr. White "*testifies or makes representations through counsel* materially different from statements made or information provided" during the proffer. *See* Attachment A to Gov't Motion (Dkt. 382-1)(emphasis added). The cases upon which the government relies in

claiming that testimony elicited in cross examination can breach the proffer agreement address proffer agreements with much broader waiver language, providing, for example, that the proffer protections would be waived upon "*any evidence* or arguments" offered on the defendant's behalf;[1] "*any evidence*, argument or representations offered by or on [the defendant's] behalf,"[2] or "*otherwise presenting a position* inconsistent with the proffer."[3]

Second, the government's portrayal of Mr. White's "admissions" is overbroad. Any opinions offered by Mr. White during the proffer reflect Mr. White's insights at the time the proffer was given – a year after he left AUC, with the benefit of training and experience under physicians in a subsequent job that involved, among other things, the prescribing of opioids. Moreover, the events of this case were not static; circumstances and knowledge changed over time. Mr. White's (reported) statements in 2017 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ do not identify when or how he came to these beliefs. Restricting Mr. White's defense *as if* opinions in the proffer represented absolute knowledge and belief from the outset of the events in issue would be fundamentally unfair, and in violation of his Fifth and Sixth Amendment rights. Additionally, after conferring, counsel for the government acknowledges that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, as represented in the government's motion.

Third, the government's only existing record of the proffer is a DEA investigation report prepared in violation of the Third Circuit requirement that agents preserve their rough notes. Due to the government's failure to maintain the rough notes, the report cannot be contrasted with

---

[1]   *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008)(emphasis added).
[2]   *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002)(emphasis added).
[3]   *United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998)(emphasis added).

2

the rough notes to see what was added, omitted, or changed, as required under *Brady v. Maryland*. The notes cannot be produced as Jencks material if the agent were to testify. Nor can the notes be produced as a statement of defendant under Rule 16. To rely on a report prepared in breach of Third Circuit protocol founded upon *Brady*, *Giglio* and the Jencks Act – and to permit agent testimony immune from cross examination concerning inconsistencies between contemporaneous rough notes and the formal report – would be a violation of Mr. White's due process rights, especially since crucial Fifth and Sixth Amendment rights are at stake.

## DISCUSSION

### A. Eliciting Testimony Through Counsel's Questions Would Not Breach the Proffer Agreement

In claiming that "elicit[ing] information in cross-examination of government witnesses" would open the door to defendant's proffer statements, the government flatly overstates the waiver provision and invites the injection of constitutional error into the trial. The proffer letter here provides for a waiver only if the defendant "*testifies or makes representations through counsel* materially different from statements made or information provided during the "off the record" proffer…" Exhibit B to Govt Motion (emphasis added). Mr. White's Sixth Amendment rights would be violated by finding a proffer waiver in questions of counsel calculated to elicit truthful testimony. *See United States v. Rosemund*, 841 F.3d 95 (2d Cir. 2016) (conviction reversed where the district court interpreted a proffer provision to bar defense counsel from asking questions on cross-examination challenging the witness's credibility); *United States v. Oluwanisola*, 605 F.3d 124 (2d Cir. 2010) (conviction reversed where the district court interpreted the proffer waiver as being triggered by questions challenging witnesses' recollection of the events – even if they could *also* be construed as "implicit factual assertions").

3

A proffer agreement must be interpreted by its terms.[4] The terms of the proffer waivers in the cases upon which the government relies were meaningfully broader than the agreement here. The proffer letter in *Hardwick*, for example, was from the District of New Jersey and was (in the Court's words) **"expansive."** *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). It provided that proffer protections were waived upon "*any evidence* or arguments offered on [the defendant's] behalf." In *Krilich*, the proffer agreement provided that waiver would be triggered by testimony or "*otherwise presenting a position* inconsistent with the proffer." *United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998)(emphasis added). In *Rebbe*, the agreement provided that waiver would be triggered by "*any evidence*, argument or representations offered by or on behalf of [defendant]." *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002)(emphasis added). In *Dortch*, the proffer agreement permitted the government to use defendant's statements to rebut *"evidence* or arguments *materially different from*" the proffer statements. *United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir. 1993)(emphasis added). And in *Velez*, the Seventh Circuit noted the comparatively expansive nature of a waiver provision allowing introduction of proffer statements to rebut "*any evidence* or arguments offered by or on behalf of [defendant] at any stage of the criminal prosecution." *United States v. Velez*, 354 F.3d 190, 191, 194 (7th Cir. 2004)(emphasis added).[5]

---

[4] Proffer agreements are contracts to be interpreted according to ordinary principles of contract law. *United States v. Rosemund*, 841 F.3d 95, 107 (2d Cir. 2016). Any ambiguities in the terms of a proffer agreement should be resolved in favor of the criminal defendant. *United States v. Pielago,* 135 F.3d 703, 709-10 (11th Cir. 1998).

[5] In *Dales* (a district court case cited by the government), counsel elicited testimony on direct and cross to support the defense that defendant was not one of the participants in a bank robbery, after the defendant had admitted in a proffer that he had participated. In permitting the introduction of proffer statements, Judge Diamond noted that counsel had foreshadowed the defense of non-participation in opening statement. Moreover, the Court relied upon *Hardwick, Krilich*, *Velez* and *Rebbe* without examining the differences among the specific proffer provisions and their import -- the issue was apparently not raised. *United States v. Dales*, 2009 WL 3806273.

4

The agreement here provides for waiver of proffer protections only if the defendant testifies or makes representations through counsel inconsistent with the defendant's statement. Unlike the cases cited above, waiver is not triggered by "any evidence" in the form of testimony elicited through questioning. Indeed, in the process of questioning a witness's credibility, or a witness's basis for his or her testimony, or in questioning the sufficiency or validity of evidence presented through the witness, testimony may be elicited that in some way could be said to be inconsistent with something the defendant may have said during the proffer. But this does not convert legitimate cross examination into "representations by counsel" that trigger a waiver of the proffer.

The Court will instruct the jury that questions by attorneys are not evidence. Such questions serve to reveal inadequacies in the government's proof and are designed to elicit the truth. Unwarranted constriction of the ability to cross examine government witnesses is a violation of the defendant's Sixth Amendment rights. *Rosemund*; *Oluwanisola*. The government cannot utilize the proffer agreement to block or chill counsel's ability to elicit truthful testimony on cross examination. In addition to being unsupported by the proffer agreement, such a policy would undermine the fundamental goal of truth-seeking in trials.

### B. The Government's Portrayal of the Proffer Statements Is Overbroad

Mr. White worked at AUC for two years, from mid-2014 to mid-2016. The events of this case were not static, and the charges concern subjective questions of knowledge and intent over time. This is not a case such the *Dales* bank robbery case cited by the government, where the statement introduced (and the defense argument in question) dealt with an objective fact: the defendant was either there at the robbery, or not. This case involves the knowledge and intent of a newly graduated physician assistant (PA) for whom AUC was his first PA job and his first

training in pain management. It would be expected that his knowledge and perspective changed over time, both during the job and after. The proffer was given a year after he left AUC. His knowledge, understanding and perspective continued to grow during that time, as he worked – and was further trained – elsewhere in pain management (among other things) after he left AUC.

Despite the nuanced issues in question here, and the inevitability that circumstances and knowledge changed over time, the proffer report is very "broad brush." Nuances of when or how Mr. White came to know or understand certain things is not explored. ███████████
███████████████████████████████████
████████████████ ███████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████████████
██████████████████████████████████.[6]

Similarly, ████████████████████████████
██████████████████████████████
███████████████████████████████████
██████████████████████████████████▌ ██
███████████████████████████████

---

[6] In conversations with the prior AUSA on the case – who was present at the proffer – undersigned counsel understood him to agree with this position.

[7] ███████████████████████████████████
███████████████████████████████████
████████████████████.

██████████████████████████

████████.[8]

### C. Curtailing Mr. White's Fifth and Sixth Amendment Rights on the Basis of an Interview Report Prepared in Breach of Third Circuit Requirements Would Be a Violation of Due Process.

For over two years, defense counsel repeatedly asked the government to produce the agents' rough notes of Mr. White's proffer. In January 2022, the government finally acknowledged that the agent's rough notes were not preserved. *See* Email from J. Bologna to A. Flannery, January 31, 2022 (Exhibit A).

Since 1977, the Third Circuit has expressly required the government to maintain agents' rough notes of interviews. *See United States v. Vella*, 562 F.2d 275 (3d Cir. 1977). In *Vella*, defendant argued that the FBI agents' destruction of their rough notes of his interview violated the principles of *Brady v. Maryland* and "deprived him of a full and fair opportunity to cross-examine the agents." *Id.* at 276. In finding the district court's refusal to exclude the agents' testimony to be error (albeit harmless, in light of other evidence in the case), the Third Circuit adopted the following policy:

> To avoid future misunderstandings, we specifically adopt the precepts announced in *United States v. Harrison,* 173 U.S. App. D.C. 260, 524 F.2d 421 (1975), as the law in this circuit, to-wit, the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to [the defendant] under the rule of *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), or the Jencks Act.

*Id.*

Five years later, in a case concerning a handwritten draft interview report by a DEA agent, the Third Circuit reiterated the *Vella* requirement and extended its Jencks Act analysis to

---

[8] ████████████████████████████████████████████████████████████████████████

draft reports adopted by an agent. *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983)(finding error in the district court's refusal to examine the agent's handwritten draft report to determine whether it was Jencks material). The Third Circuit emphasized the importance of maintaining agent rough notes and draft reports. "[T]he government must be vigilant in observing its responsibility to preserve these materials because the Supreme Court has cautioned that 'the harmless error doctrine must be strictly applied in Jencks Act cases.'" *Id.* at 259 (citation omitted).

In addition to being potential *Brady* or Jencks material, agent rough notes of defendants' interviews have been held to be statements that must be produced by the government under Rule 16(a)(1) of the Federal Rules of Criminal Procedure. *See United States v. Blatt,* 2007 WL 1795685 (E.D. Pa.)(requiring rough notes of interviews to be produced in addition to formal reports; collecting cases at fn.2).

In this case, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬ The DEA agent took notes on his computer. No other agent took notes. Rather than saving the rough notes as required, the DEA agent "converted" the notes into the DEA-6 (the formal interview report). *See* Email of J. Bologna, Exhibit A. There is no way of knowing what the agent added, subtracted, rephrased, expanded or otherwise edited to create the formal report. The report is dated two weeks after the interview. If – as happens – the interview report contains something of significance not contained in the rough notes (or *vice versa*), this would be important *Giglio* material – precisely why the Third Circuit in *Vella* directed the government to maintain agent rough notes. Five years have passed since the agent's notes were overwritten, in a case where the various agents conducted over 150 interviews. Any representation at this point as to what was or was not in the rough notes could not reasonably be reliable.

The dangers and unfairnesses that gave rise to cases like *Vella* and *Ammar* are magnified here, where the government asks the Court to rely upon the interview report to make a determination as to whether Mr. White's Fifth and Sixth Amendment rights are waived at trial. Indisputably, the government did not maintain the rough notes as required for purposes of *Brady*, the Jencks Act, and Rule 16. The requirement of maintaining agent rough notes is not a new or surprising one and has been clearly articulated by the Third Circuit. Without the ability to contrast the interview report with the agent's rough notes, the report – or any recollection "refreshed" by it after the passage of so much time – cannot be fully and fairly tested through cross examination and is not sufficiently reliable to satisfy Due Process requirements in making a waiver determination.

## CONCLUSION

For each of the reasons discussed above, any suggestion by the government at trial that Mr. White has breached the proffer agreement should be viewed with great care, caution, and hesitancy by the Court.

Respectfully submitted,

*/s/ Ann C. Flannery*

ANN C. FLANNERY
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
*acf@annflannerylaw.com*

Attorney for Mitchell White

Date: April 27, 2022

9

## CERTIFICATE OF SERVICE

I, Ann C. Flannery, counsel for defendant Mitchell White, hereby certify that on this 27th day of April, 2022, I caused a redacted copy of the foregoing **RESPONSE TO *MOTION IN LIMINE* TO PRECLUDE DEFENDANT FROM TAKING A POSITION DURING TRIAL THAT CONTRADICTS HIS PROFFER STATEMENTS** to be served by ECF – and an unredacted copy to be served by email -- upon the following:

>Christopher Parisi
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106-4476
>Christopher.Parisi@usdoj.gov
>
>Mary Kay Costello
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106
>Marykay.Costello@usdoj.gov

>ANN C. FLANNERY
>Law Offices of Ann C. Flannery
>1835 Market Street, Suite 2700
>Philadelphia, PA 19103
>215.636.9002
>acf@annflannerylaw.com