# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 18-101-06** |
| | : | |
| **MITCHELL WHITE** | : | |

# ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Defendant Mitchell White's Motion *In Limine* to Preclude the Use of the Term "Reasonable Medical Certainty" and Misleading References to "Illegal" or "Criminal" Prescriptions, and the government's response thereto,

IT IS HEREBY ORDERED that the Motion is GRANTED.

1. The government shall not use the terms "illegal prescribing," "illegal prescriptions" or "criminal prescriptions" to mean prescriptions "outside the usual course of professional practice and without medically legitimate purpose." The government is directed to caution its witnesses accordingly.

2. The government shall not use, and shall caution its expert witness not to use, the term "reasonable medical certainty."

                                                       **BY THE COURT:**

                                                       _____
                                                       **HON. GENE E.K. PRATTER**
                                                       **United States District Court Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 18-101-06** |
| | : | |
| **MITCHELL WHITE** | : | |

**Defendant Mitchell White's Motion *In Limine* to Preclude (1) References to "Illegal" or "Criminal" Prescriptions and (2) the Term "Reasonable Medical Certainty"**

Defendant, Mitchell White, by and through undersigned counsel, respectfully moves this Honorable Court to preclude the use of misleading and unfairly prejudicial phrases by the government, specifically (1) the terms "criminal prescriptions," "illegal prescriptions" and "criminal prescribing" to mean prescriptions "outside the usual course of professional practice and without medically legitimate purpose;" and (2) the term "reasonable medical certainty" as applied to the opinions of its medical expert. These terms serve no necessary purpose and would unfairly prejudice defendant by confusing or misleading the jury as to the legal charges and elements in the case, as well as the legal effect of the expert's opinions. These terms should be excluded under Fed.R.Evi. 403.

**I.      Background**

The indictment in this case charges crimes under two statutes: (1) maintaining drug-involved premises, in violation of 21 U.S.C. §856(a)(1) (Counts One through Four); and (2) conspiracy to distribute a controlled substance in violation of 21 U.S.C. §846 (Count Five). Both crimes require proof that the defendant knowingly and intentionally prescribed drugs that were

not medically necessary and in the usual course of professional practice.[1]  Importantly, however, the government must prove much more than that element in order to sustain a conviction on either charge.

With respect to Counts One through Four, proof beyond a reasonable doubt of a number of other elements is required.  To establish a violation of 21 U.S.C. §856(a)(1), the government must prove that (1) the defendant permanently or temporarily maintained the place described in the Indictment; (2) the defendant maintained that place for the purpose of prescribing drugs that were not medically necessary and in the usual course of professional practice; and (3) the defendant acted knowingly.  With respect to some defendants, including Mr. White, the government is pursuing a theory of aiding and abetting as to these Counts.  To establish aiding and abetting under 18 U.S.C. §2, the government must prove that (1) the principal committed the offenses charged by committing each of the elements of the charged offense; (2) the defendant knew that the offense charged was going to be committed by the principal; (3) the defendant knowingly did some act for the purpose of aiding the principal in committing the offense charged, and with the intent that the principal would commit that specific offense; and (4) the defendant performed an act in furtherance of the offense charged.

To establish a violation of 21 U.S.C. §846, the government must prove that (1) two or more persons agreed to distribute a controlled substance; (2) the defendant was a party to that agreement; (3) the defendant joined the agreement knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective.  In order to find a medical professional guilty of a criminal violation of

---

[1] The Controlled Substances Act provides an exception to the prohibition against distribution of controlled substances for medical providers registered with the DEA where the prescriptions are "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 Code of Federal Regulations §1306.04.

the Controlled Substances Act, the jury must find that the medical professional "***knowingly and intentionally*** acted 'outside the course of professional practice' and without 'a legitimate medical purpose:'" *United States v. Chube*, 538 F.3d 693, 697 (7th Cir. 2008)(emphasis added) .

> [T]o convict a practitioner under §841(a), the government must prove (1) that the practitioner distributed controlled substances, (2) that the distribution of those controlled substances was outside the usual course of professional practice and without a legitimate medical purpose, and (3) that the practitioner acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice.

*Id.* at 698 (7th Cir. 2008) *quoting United States v. Feingold,* 454 F.3d 1001, 1008 (9th Cir. 2006).

## II. The Government Should Not Be Allowed to Use the Terms "Illegal" or "Criminal" to Mean Prescriptions that Are "Not Medically Necessary and Outside the Usual Course of Professional Practice."

As discussed in the Government's Trial Memorandum, the centerpiece of the government's case will be the testimony of its medical expert, Dr. Stephen Thomas. Dr. Thomas will opine as to what he believes to be the model for prescribing controlled substances, including an "initial history and physical exam" that he deems adequate, documentation that he deems adequate, pain complaints that he deems adequate, and certain results on urine drug screen tests. *See* Government's Trial Memorandum, at pp. 4-5. Dr. Thomas will opine that certain drug screen results on a given day (such as the "presence of Cocaine at any point" or the presence of any unprescribed opioid) renders any subsequent prescription "not medically necessary and in the usual course of practice." *Id.* at 5. He will then utilize his opinions as to proper medical practice to opine that the controlled substance prescriptions in various patient files were "not for a medically legitimate purpose in the usual course of professional practice." *Id.* at 6.

Dr. Thomas cannot offer testimony as to the mental state of any defendant. He is not even expected to identify which of the defendants issued particular prescriptions. *See id.* (asserting that federal agents will identify the doctors who wrote the prescriptions). Certainly

3

Dr. Thomas cannot opine as to whether any defendant has committed the crimes charged.  In short, Dr. Thomas simply offers evidence (which the jury can accept or not) as to one of the elements of the crimes charged.

Nonetheless, throughout the investigation and post-indictment, the government has repeatedly referred to prescriptions as "illegal" or "criminal" solely on the basis of Dr. Thomas deeming a prescription unnecessary or outside the usual course of practice.  An example of this dramatic leap of inference appears in the Government's Trial Memorandum:

> In reviewing the individual patient files, Dr. Thomas repeatedly cited these factors in identifying prescribing that fell outside the usual course of professional practice and was not medically necessary.  In summary, Dr. Thomas found *criminal prescribing* in almost every AUC patient file he reviewed.

Government's Trial Memorandum at 6 (emphasis added).   The government uses the terms "criminal prescriptions,"  "criminal prescribing," or "illegal prescribing" thirteen times in its Trial Memorandum, all in reference to prescriptions Dr. Thomas deems not medically necessary and outside the usual course of practice.

Proof that a prescription is "outside the usual course of professional practice and not for a legitimate medical purpose" might suffice to prove negligence, malpractice, or a regulatory violation, but – standing alone – it does not establish the crimes charged.  To prove the crimes charged, the government must prove each of the multiple elements of each offense.  Criminal scienter must be proven, and any good faith defense must be overcome.

In the context of a criminal trial where the government must prove much more than prescriptions that were not "medically necessary" and "outside the usual course of professional practice," using the term "criminal" or "illegal" as shorthand for prescriptions deemed medically unnecessary is inaccurate, misleading, and unfairly prejudicial.  The jury could easily be misled into believing that prescriptions "outside the usual course of professional practice and not for a

4

legitimate medical purpose" are *per se* criminal, regardless of intent, good faith, or proof of any other of the required elements of the charged offenses. This danger is acute when the jury will hear opening statements and weeks of testimony before being properly instructed by the Court.

The danger pertains whether the leap from "unnecessary" and "outside the course of usual professional conduct" to "criminal" and "illegal" is made by prosecutors in their questions and argument or by government witnesses in their testimony. Indeed, Dr. Thomas made *exactly* that unfair, inaccurate and prejudicial assertion when opining in a previous trial that a prescription was not medically necessary. In *United States v. Bado*, an opioid prescription prosecution in EDPA, Dr. Thomas opined on a particular prescription by testifying, "This is not medically legitimate for pain….This is not medically legitimate prescribing of controlled substances. This is a violation of the controlled substance regulations **and – and a criminal act in violation of the law."** Testimony of Stephen Thomas, *United States v. Bado*, 15-cr-37 at p. 183 (EDPA October 3, 2016)(emphasis added).

Conclusory assertions that prescriptions were "criminal" or "illegal" usurp the Court's role in instructing the jury as to the elements of the offenses at issue here. Such references would wrongly state the law in the context of a criminal trial and unfairly prejudice the defendants. The use of these terms to mean prescriptions "outside the usual course of professional practice and not for a legitimate medical purpose" should be barred under Rule 403 and the Court's inherent authority to control and maintain fairness in the criminal trial. Given the past use of these terms by case agents and Dr. Thomas, the government should be instructed to advise its witnesses not to volunteer the terms themselves.

### III.     The Government Should Not Be Permitted to Use the Term "Reasonable Medical Certainty" in Connection with Its Expert's Opinions

In past opioid prescription cases, the government has fallen into the habit of having Dr. Thomas testify that his opinions as to the propriety of prescriptions are "to a reasonable degree of medical certainty."  This phrase, however, has no scientific meaning, is not required for admissibility in federal court, and has been widely criticized  -- including by the Department of Justice and the National Commission on Forensic Science.   It is particularly confusing and unfairly prejudicial in a **criminal** case where the words "reasonable" and "certainty" could lead jurors to believe that the expert is testifying as to the absence of "reasonable doubt."  For these reasons, the phrase should be barred under Rule 403.  *See, e.g.,* Paul C. Gianelli, "Reasonable Scientific Certainty": A Phrase in Search of a Meaning, Crim. Just., Spring 2010, at 40, 41.

In 2016, the Attorney General issued a memorandum to DOJ department heads mandating, among other things, that DOJ forensic laboratories ensure that "forensic examiners are not using the expressions 'reasonable scientific certainty' or 'reasonable [forensic discipline] certainty' in their reports or testimony."  Memorandum for Heads of Department Components from Attorney General Lynch, September 6, 2016 (attached as Exhibit A).   The Attorney General further directed that "[**d**]**epartment prosecutors will abstain from use of these expressions when presenting forensic reports or questioning forensic experts in court** unless required by a judge or applicable law."  *Id.* (emphasis added).

The Attorney General's directive was made in response to recommendations from the National Commission on Forensic Science (NCFS) -- a joint undertaking by the Department of Justice and the National Institute of Standards and Technology.  In publicly reported views on the issue, the NCFS explained that the phrase  did not originate in the scientific community but was "a stylistic approach adopted by a lawyer" which -- years later -- evolved into "custom and

6

practice" in some state courts in connection with the determination of admissibility of an expert opinion.   Views Document re: Testimony using the term "Reasonable Scientific Certainty," National Commission on Forensic Science, https:///www.justice.gov/archives/ncfs/page/file/831786/download (December 1, 2016) (attached as Exhibit B).

Noting that the "modern view" in most state courts is that "reasonable [scientific] certainty" is not required, the NCFS explained that the phrase is not needed or required in federal court:

> [N]either the *Daubert* trilogy of cases … nor Federal Rules of Evidence 702-705 require such language. … As well, both the *Daubert* and *Frye* tests, when properly implemented, serve to screen out speculative testimony and thus further demonstrate the lack of need for the "reasonable degree of certainty" language.

*Id.*

The Commission went on to give several reasons that the phrase is not only unnecessary but problematic and should not be used in court, including:

- There is no common definition across science or within disciplines as to what threshold establishes "reasonable" certainty.  Therefore…the term is idiosyncratic to the witness.

- **Coupled with the term "reasonable," a juror might equate it with certainty at the level demanded by the 'beyond a reasonable doubt' standard of proof.**

*Id.* (emphasis added).   *E.g. United States v. Glynn*, 578 F. Supp. 2d 567, 574 (S.D.N.Y. 2008)(precluding as misleading testimony from a ballistics expert that his opinion was "to a reasonable degree of ballistics certainty").

It is easy to imagine a lay juror assuming that an opinion to a "reasonable medical certainty" is inconsistent with the possibility of "reasonable doubt," or that the opinion itself is an opinion that no reasonable doubt exists.  At a minimum, a juror is likely to be confused by the juxtaposition of the two similarly worded phrases.

Both before and after the DOJ directive advising prosecutors not to use the term "reasonable [medical] certainty," federal prosecutors in this district and elsewhere have elicited from Dr. Thomas testimony that his opinions are "to a reasonable degree of medical certainty." [2]

---

[2] For example, an EDPA prosecutor repeatedly used this phrase when questioning Dr. Thomas in an opioid prescription case tried in 2013 (prior to the DOJ directive):

> Q: Sir, were you specifically asked to look at records in this case and provide an opinion **to a reasonable degree of medical certainty** about the standard of whether the doctor in this practice prescribed within the usual course of medical practice or for a legitimate medical purpose?
> A. Yes, I was.    …
> Q. Sir, you've given -- you've reviewed any number of files and you've given us opinions about the practice in the individual as well as in the overall approach and do you hold those opinions **to a reasonable degree of medical certainty**?
>
> A. Yes, I do.

Testimony of Stephen Thomas, *United States v. Werther*, 11-cr-434, at pp. 25, 89 (May 17, 2013)(emphasis added).

Another EDPA prosecutor used the phrase in questioning Dr. Thomas in *United States v. Bado* shortly after the 2016 DOJ directive:

> Q And after your review of those documents, did you come here today prepared to render an opinion as to the medical treatment offered by the Defendant, as well as the prescribing patterns that you saw in -- with the Defendant?
> A Yes.
> Q And **will that opinion be to a reasonable degree of medical certainty**?
>
> A It certainly shall.

Testimony of Stephen M. Thomas, *United States v. Bado*, 15-cr-37 at p. 79 (EDPA October 3, 2016)(emphasis added).

In 2018, Dr. Thomas was asked the same question in a Middle District criminal trial:

> Q. I want to first ask you about all the medical files that you testified to yesterday and rendered opinions on. **Were those opinions all rendered to a reasonable degree of medical certainty**?
>
> A: Yes, they were.

Testimony of Stephen Thomas in *United States v. Fuhai Li*, 16-CR-00194 at p. 3 (MDPA May 23, 2018)(emphasis added).

8

Dr. Thomas made the same assertion in the expert report in this case: "I can say **within a reasonable degree of medical certainty** that all controlled substance prescriptions after [...] were not for a medically legitimate purpose in the usual course of professional practice. Expert Report, p. 22 (emphasis added).

The phrase "reasonable medical certainty" has no scientific or objective meaning. It is not necessary under *Daubert* and its progeny. It is unfairly prejudicial in a criminal trial, where it can confuse the jury and undermine the reasonable doubt standard. Under Rule 403 and the Court's inherent authority to control and maintain fairness in the criminal trial, the government should be barred from using the phrase and should be directed to instruct Dr. Thomas not to use the term in his testimony.

                    Respectfully submitted,

*/s/ Ann C. Flannery*

ANN C. FLANNERY
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
*acf@annflannerylaw.com*

Attorney for Mitchell White

Date: April 28, 2022

## CERTIFICATE OF SERVICE

I, Ann C. Flannery, counsel for defendant Mitchell White, hereby certify that on this 28th day of April, 2022, I caused a true and correct copy of the foregoing Defendant Mitchell White's Motion *In Limine* to Preclude (1) References to "Illegal" or "Criminal" Prescriptions and (2) the Term "Reasonable Medical Certainty" to be served by ECF upon all counsel of record, including the following:

> Christopher Parisi
> U.S. Attorney's Office
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106-4476
> Christopher.Parisi@usdoj.gov
>
> Mary Kay Costello
> U.S. Attorney's Office
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106
> Marykay.Costello@usdoj.gov

ANN C. FLANNERY
Law Offices of Ann C. Flannery
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
acf@annflannerylaw.com