# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 18-101-06 |
| | : | |
| MITCHELL WHITE | : | |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Defendant Mitchell White's Motion to Suspend Trial Date Due to Government Breaches of *Brady v. Maryland* and Fed.R.Crim.P. 16,

IT IS HEREBY ORDERED that the Motion is GRANTED. The May 31, 2022 trial date is suspended pending further Order of this Court.

BY THE COURT:

_____
**HON. GENE E.K. PRATTER**
**United States District Court Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 18-101-06 |
| : | |
| MITCHELL WHITE : | |

**DEFENDANT'S MOTION TO SUSPEND TRIAL DATE DUE TO GOVERNMENT BREACHES OF FED.R.CRIM.P. 16 AND *BRADY v. MARYLAND***

Defendant, Mitchell White, by and through undersigned counsel, respectfully moves this Honorable Court to suspend the May 31, 2022 trial date pending the filing of a motion to dismiss the indictment against him. Despite having had over three years to produce discovery, the government has recently produced over 75 hours of video and audio tape and other discovery materials – most of which have existed for years. Among this is exculpatory material as to Mr. White that should have been produced over two years ago. The government's years-long breach of its obligations under Fed.R.Crim.P. 16 and *Brady v. Maryland* has created a situation in which Mr. White's statutory and constitutional speedy trial rights cannot be met in concert with his Fifth and Sixth Amendment rights to due process, to confront witnesses against him, and to the effective assistance of counsel who has reviewed, analyzed and utilized discovery and *Brady* material. In support of this motion, defendant states as follows:

1. Defendant was indicted by Superseding Indictment on January 9, 2019 – almost three and a half years ago.

2. Trial was originally scheduled for April 20, 2020. (Dkt. 134.) Mr. White expected to be prepared to go to trial on that date. On February 27, 2020, however, the government produced 46 patient files comprising over 13,750 pages of medical records – patient

files upon which its medical expert had relied.  Government counsel advised defense counsel that "in preparing for the April 20th [2020] trial, the case agent recently discovered [that these files] had not been…provided in discovery" as intended.  Letter from J. Bologna to Defense Counsel, February 27, 2020 (Exhibit A, filed under seal).  Government counsel acknowledged at the time that this was "a mistake by the government in producing materials that are subject to Federal Rule of Criminal Procedure 16." *Id.*  Given the nature, volume and timing of the late discovery, the April 20, 2020 trial date did not allow adequate time for defense counsel to review and utilize the late discovery.  Mr. White had no choice but to request a continuance of the trial date on that basis.  (Dkt. 197.)

3. Meanwhile, the COVID-19 pandemic began to impact Court operations.   The initial pandemic-related Standing Order issued by the Chief Judge of the Eastern District of Pennsylvania suspended civil and criminal trials through April 13, 2020.  *In re: Temporary Continuance of Civil and Criminal Jury Trials Due to the Exigent Circumstances Created by COVID-19*, March 13, 2020 (EDPA).

4. After a March 18, 2020 hearing to discuss the trial date with all counsel, during which both the tardy Rule 16 discovery and the COVID-19 outbreak were discussed, on March 20, 2020, this Court continued the trial to June 15, 2020.  (Dkt. 210.)

5. Subsequent Standing Orders continued to suspend criminal jury trials in the Eastern District of Pennsylvania and/or restrict criminal jury trials to selected short, single

defendant trials with a minimum of lay witnesses.[1]  As a result, the trial date in this complex, multi-defendant case was continued multiple times.[2]

6.      Trials resumed in the fall of 2021.  On September 8, 2021, this Court set a trial date of January 10, 2022. (Dkt. 303.)[3]

7.      Mr. White was prepared to proceed to trial on January 10, 2022.  In response to a December 16, 2021 motion by a co-defendant to continue the January 10 trial date (Dkt. 332), Mr. White objected and asserted his statutory and constitutional speedy trial rights.  (Dkt. 334.) By December 31, 2021, however, there was a significant surge in the number of local cases of

---

[1]     *In Re: Second Extension of Adjustments to Court Operations Due to the Exigent Circumstances Crated by COVID-19*, May 29, 2020 (extending suspension of trials through August 31, 2020); *In Re: Fifth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, August 31, 2020 (continuing all trials scheduled to begin on or before November 2, 2020 with the exception of a limited number of specially designated trials); *In Re: Sixth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, October 30, 2020 (continuing all trials scheduled to begin on or before December 31, 2020 with the exception of a limited number of specially designated trials); *In Re: Seventh Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, November 25, 2020 (continuing all trials scheduled to begin on or before January 15, 2021); *In Re: Eighth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, January 15, 2021 (continuing all trials scheduled to begin on or before February 15, 2021); *In Re: Ninth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, February 12, 2021 (continuing all jury trials "until further Court order"); *In Re: Tenth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19,* March 18, 2021 (continuing all jury trials scheduled to begin on or before April 5, 2021 and conditionally permitting only specially designated trials through at least June 7, 2021);  *In Re: Eleventh Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, March 30, 2021 (continuing all jury trials scheduled to begin on or before May 3, 2021, then resuming only selected "test period" cases through "at least" June 7, 2021); *In Re: Twelfth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, June 7, 2021 (explaining the plan for resumption of jury trials with the anticipation that only a limited number of trials would be held through September 7, 2021).

[2]     Order dated May 4, 2020 (Dkt. 236)(continuing trial to December 7, 2020); Order dated October 20, 2020 (Dkt. 242)(continuing trial date indefinitely); Order dated January 19, 2021 (Dkt. 255)(continuing trial to June 7, 2021); Order dated June 3, 2021 (Dkt. 278)(continuing trial to October 4, 2021); Order dated September 8, 2021 (Dkt. 303)(continuing trial to January 10, 2022).

[3]     This continuance was based on the June 7, 2021 Standing Order (which explained the anticipated plan for resumption of trials) as well as the unavailability of a co-defendant's counsel due to previous attachment in another long-delayed trial.

the Omicron COVID-19 variant. Reiterating that he wanted the trial to go forward as soon as practicable, Mr. White acknowledged that a short continuance would be prudent since it was not in his interest for a trial to be undertaken in fits and starts due to the likelihood of disruption from participants contracting or being exposed to COVID-19 in the anticipated Omicron surge immediately after the holidays. (Dkt. 357.)

8.  On February 14, 2022, the Court continued the trial to May 31, 2022. (Dkt. 368.)

9.  Mr. White was prepared to go to trial on May 31, 2022, other than agreeing that the trial should be briefly continued in anticipation of the Supreme Court's decision in *Ruan v. United States*, No. 20-1410. The question at issue in *Ruan* is the good faith standard in physician prescribing cases – a standard that directly impacts Mr. White's defense and the jury instructions to be proposed in this case. The case was argued before the Supreme Court in March 2022 and a decision is expected before the Court recesses at the end of June. Given the proximity of the May 31 trial date to the expected issuance of the *Ruan* decision, Mr. White took the position (articulated at the May 12, 2022 status conference) that it would be prudent to postpone the trial briefly in hopes of clarification of the good faith standard. Mr. White submits that a continuance of no more than 30 days would be sufficient for this purpose.

10.  In the past three weeks, however – *on the eve of a trial date almost 3 ½ years after indictment* – the government has produced an avalanche of new discovery. *See* Letters from M. Costello to Defense Counsel dated April 29, 2022; May 4, 2022; and May 10, 2022. (Exhibit B, filed under seal). This discovery includes information about previously undisclosed undercover operations, 60 hours of video footage, 16 hours of audio tape, patient files, search warrant photographs, interview reports and other investigatory records.

11. Based on the government's own descriptions of the discovery material, most of it was *not* recently acquired by the government, [4] nor is much of it otherwise appropriate for late production. Based on a preliminary review, some of it is material to preparation of a defense, and therefore should have been previously produced under Fed.R.Crim.P. 16(a)(1)(E)(i) or – depending on the nature of the materials – *Brady v. Maryland*. The government acknowledges that some of it may be used by the government at trial; it therefore should have been produced previously under Fed.R.Crim.P 16(a)(1)(E)(ii). The government discloses that one of its cooperating witnesses participated in other investigations, which is *Brady*/*Giglio* material (although the government fails to provide sufficient detail for cross-examination purposes).

12. **Most egregiously as to Mr. White, the discovery contains clearcut exculpatory evidence that should have been produced over two years ago under *Brady v. Maryland*.** Newly produced interview reports dated March 2020 reveal that the government interviewed a former AUC patient *three times* that month. In these interviews, the witness told the government that at her last AUC visit she was seen by Mr. White, who counseled her to get off pain medications (which she then did). This is clearly exculpatory material in the face of charges that Mr. White was complicit in operating an illegal drug house and that he conspired to distribute drugs illegally. The relevance of these statements could hardly have been missed -- the

---

[4] In one of its recent cover letters, the government describes the newly produced surveillance footage and recordings as having been "recently received from the FBI." *See* Exhibit B, Letter dated April 29, 2022 at p. 2. Possession by the FBI – an agency intimately involved in the investigation and prosecution of this case – does not excuse the United States Attorney's Office from producing it. The government has a duty to disclose all information "actually or constructively in its possession or accessible to it." *United States v. Perdomo*, 920 F.2d 967, 970 (3d Cir. 1991). A "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989). *See also United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993)(defining constructive possession of the prosecutor as including material he should have known was in existence).

interviews were conducted while Mr. White was under indictment and facing an imminent April 20, 2020 trial date.[5]  Disturbingly, the case almost proceeded to trial in January 2022 without these reports being turned over to the defense.  Having discovered these reports amongst the reams of new discovery little more than a week before the scheduled May 31 trial date, defense counsel has inadequate time to follow up – and to search the rest of the voluminous new discovery for other *Brady* and *Giglio* material.

13.     The government's pronouncement at the May 12, 2022 status hearing that it is not requesting a continuance of the May 31, 2022 trial date is as audacious as its failure to timely disclose *Brady* and *Giglio* material.  The government's position blatantly disregards defendant's constitutional right to effective assistance of counsel at trial – including the review and utilization of discovery significant to the defense of the case.

14.     At the same time, defendant has both a constitutional and a statutory right to a speedy trial.  The government's grossly tardy production of discovery and *Brady* material makes these rights incompatible with Mr. White's Fifth and Sixth Amendment rights to due process, to confront witnesses against him, and to the effective assistance of counsel who has reviewed, analyzed and utilized discovery and *Brady* material.  Defendant should not bear responsibility under the constitution or the Speedy Trial Act for a continuance request when the government's repeated failures to satisfy its obligations caused the need for additional time.  This is not an instance of a single piece of evidence being overlooked.  The government's violations of its

---

[5]     The government produced a large set of Jencks material in March 2020 in anticipation of the April 20, 2020 trial date, but these reports were not included.  Undersigned counsel has searched the previously produced discovery material both manually (based on government file names) and electronically (through a database search engine) to confirm that these reports were not previously produced.

discovery and *Brady* obligations have been repeated, extensive and on-going since the outset of discovery production in this case.

15. Defendant objects to exclusion under the statutory speedy trial clock of any continuance beyond a 30-day wait for the *Ruan* decision. *See* 18 U.S.C. §3161(h)(7)(C) ("No ['ends of justice'] continuance…shall be granted because of general congestion of the court's calendar, or lack of diligent preparation…on the part of the attorney for the Government."). The government's chronic lack of diligent preparation in this case, including meeting its obligations to the defense, is at the heart of the problem here.

16. In short, Mr. White waives neither his rights to a speedy trial nor his rights to due process and the effective assistance of counsel. It is now impossible for these fundamental rights to be met fairly and co-extensively. Mr. White plans to file a motion to dismiss the superseding indictment, and respectfully requests that the May 31 trial date be suspended while the motion is prepared.

                Respectfully submitted,

*/s/ Ann C. Flannery*

ANN C. FLANNERY
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
acf@annflannerylaw.com

Attorney for Mitchell White

Date: May 25, 2022

## CERTIFICATE OF SERVICE

I, Ann C. Flannery, counsel for defendant Mitchell White, hereby certify that on this 25th day of May, 2022, I caused a true and correct copy of the foregoing DEFENDANT'S MOTION TO SUSPEND TRIAL DATE DUE TO GOVERNMENT BREACHES OF FED.R.CRIM.P. 16 AND *BRADY v. MARYLAND* to be served by ECF upon all counsel of record, including the following:

>Christopher Parisi
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106-4476
>Christopher.Parisi@usdoj.gov
>
>Mary Kay Costello
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106
>Marykay.Costello@usdoj.gov

_____
ANN C. FLANNERY
Law Offices of Ann C. Flannery
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
acf@annflannerylaw.com