**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 18-101-06** |
| | : | |
| **MITCHELL WHITE** | : | |

**ORDER**

AND NOW, this _____ day of _____, 2022, upon consideration of Defendant Mitchell White's Motion to Dismiss the Charges Against Him,

IT IS HEREBY ORDERED that the Motion is GRANTED.  The Superseding Indictment (Dkt. 14) is dismissed with prejudice as against defendant Mitchell White.

**BY THE COURT:**

_____
**HON. GENE E.K. PRATTER
United States District Court Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 18-101-06 |
| | : | |
| **MITCHELL WHITE** | : | |

### DEFENDANT MITCHELL WHITE'S MOTION TO DISMISS THE CHARGES AGAINST HIM

Defendant Mitchell White, by and through undersigned counsel, respectfully moves this Honorable Court to dismiss with prejudice all charges against him in the Superseding Indictment. The government's chronic, years-long breach of its obligations under Fed.R.Crim.P. 16 and *Brady v. Maryland* has created a situation in which Mr. White's statutory and constitutional speedy trial rights have been and are being violated and simply cannot be met consistent with his Fifth and Sixth Amendment rights to due process and the effective assistance of counsel.

Defendant bases this motion on the "speedy trial" guarantee of the Sixth Amendment and the Speedy Trial Act as well as Rule 48(b) of the Federal Rules of Criminal Procedure. "While the standards that a court must utilize …under each of these provisions may vary, nevertheless, it is apparent that the chief societal and personal interests to be protected by the three are similar." 546 F. Supp. 35, 37 (M.D. Pa. 1982). In *United States v. Marion*, the Supreme Court identified these interests:

> Inordinate delay … may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense…. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

404 U.S. 307, 320 (1971).

For the reasons set forth below and in the accompanying Memorandum in Support, the charges against Mr. White should be dismissed. If, however, the Court declines to dismiss the charges against Mr. White, defendant moves in the alternative for the imposition of remedial sanctions against the government due to its chronic and serious breach of its discovery obligations. As discussed in the Memorandum in Support, such sanctions should include precluding the government from utilizing the late-produced evidence and any statement from Mr. White's proffer.

In support of this motion, defendant states as follows:

1. Defendant was indicted by Superseding Indictment on January 9, 2019 – exactly four years prior to the currently scheduled trial date of January 9, 2023.

2. Trial was originally scheduled for April 20, 2020. (Dkt. 134.) Mr. White expected to be prepared to go to trial on that date.

3. As early as October 2019, counsel for Mr. White (as well as counsel for other defendants) advised the government that the discovery did not seem to include all of the patient files referenced in the government's expert report. *See* Email from A. Flannery to J. Bologna dated October 22, 2019 (Exhibit A). Counsel requested a full set of the patient files that had been provided to the expert. The government informally advised counsel that it believed all pertinent patient files had been produced. Given that various patients had multiple files at multiple locations, it was difficult for defense counsel to discern whether all patient files utilized by the government expert had been produced.

4. It was not until February 27, 2020 – *over four months later* – that the government finally acknowledged that all files had not been produced. On that date, the government

produced 46 patient files comprising over 13,750 pages of medical records – patient files upon which its medical expert had relied.  Government counsel advised defense counsel that "in preparing for the April 20th [2020] trial, the case agent recently discovered [that these files] had not been…provided in discovery" as intended.  Letter from J. Bologna to Defense Counsel, February 27, 2020 (Exhibit A to Defendant Mitchell White's Motion to Suspend Trial Date (Dkt. 410), filed under seal).  Government counsel acknowledged at the time that this was "a mistake by the government in producing materials that are subject to Federal Rule of Criminal Procedure 16."  *Id.*

5. Given the nature, volume and timing of the late Rule 16 discovery production, the April 20, 2020 trial date did not allow adequate time for defense counsel to review and utilize the patient materials, which were among the central focus of the government's case and expert opinion.  As a consequence, on March 10, 2020, the government's tardy discovery production caused Mr. White to request a continuance of the trial date in order to satisfy his constitutional and statutory rights to receive, review and utilize pertinent discovery.  (Dkt. 197.)

6. Shortly thereafter, the COVID-19 pandemic began to impact Court operations. The initial pandemic-related Standing Order issued by the Chief Judge of the Eastern District of Pennsylvania suspended civil and criminal trials through April 13, 2020.  *In re: Temporary Continuance of Civil and Criminal Jury Trials Due to the Exigent Circumstances Created by COVID-19*, March 13, 2020 (EDPA).

7. After a March 17, 2020 hearing to discuss the trial date with all counsel during which both the tardy Rule 16 discovery and the COVID-19 outbreak were discussed, on March 20, 2020, this Court continued the trial to June 15, 2020.  (Dkt. 210.)

8.      Subsequent Standing Orders continued to suspend criminal jury trials in the Eastern District of Pennsylvania and/or restrict criminal jury trials to selected short, single defendant trials with a minimum of lay witnesses.[1]  As a result, the trial date in this complex, multi-defendant case was continued multiple times.[2]

9.      Jury trials in the Eastern District of Pennsylvania resumed pursuant to Standing Order in the fall of 2021.  On September 8, 2021, this Court set a trial date of January 10, 2022. (Dkt. 303.)[3]

---

[1]   *In Re: Second Extension of Adjustments to Court Operations Due to the Exigent Circumstances Crated by COVID-19*, May 29, 2020 (extending suspension of trials through August 31, 2020); *In Re: Fifth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, August 31, 2020 (continuing all trials scheduled to begin on or before November 2, 2020 with the exception of a limited number of specially designated trials); *In Re: Sixth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, October 30, 2020 (continuing all trials scheduled to begin on or before December 31, 2020 with the exception of a limited number of specially designated trials); *In Re: Seventh Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, November 25, 2020 (continuing all trials scheduled to begin on or before January 15, 2021); *In Re: Eighth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, January 15, 2021 (continuing all trials scheduled to begin on or before February 15, 2021); *In Re: Ninth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, February 12, 2021 (continuing all jury trials "until further Court order"); *In Re: Tenth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19,* March 18, 2021 (continuing all jury trials scheduled to begin on or before April 5, 2021 and conditionally permitting only specially designated trials through at least June 7, 2021); *In Re: Eleventh Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, March 30, 2021 (continuing all jury trials scheduled to begin on or before May 3, 2021, then resuming only selected "test period" cases through "at least" June 7, 2021); *In Re: Twelfth Extension of Adjustments to Court Operations Due to the Exigent Circumstances Created by COVID-19*, June 7, 2021 (explaining the plan for resumption of jury trials with the anticipation that only a limited number of trials would be held through September 7, 2021).

[2]   Order dated May 4, 2020 (Dkt. 236)(continuing trial to December 7, 2020); Order dated October 20, 2020 (Dkt. 242)(continuing trial date indefinitely); Order dated January 19, 2021 (Dkt. 255)(continuing trial to June 7, 2021); Order dated June 3, 2021 (Dkt. 278)(continuing trial to October 4, 2021); Order dated September 8, 2021 (Dkt. 303)(continuing trial to January 10, 2022).

[3]   This continuance was based on the June 7, 2021 Standing Order (which explained the anticipated plan for resumption of trials) as well as the unavailability of a co-defendant's counsel due to previous attachment in another long-delayed trial.

10. Mr. White was prepared to proceed to trial on January 10, 2022. In response to a December 16, 2021 motion by a co-defendant to continue the January 10 trial date (Dkt. 332), Mr. White objected and asserted his statutory and constitutional speedy trial rights. (Dkt. 334.) By December 31, 2021, however, there was a significant surge in the number of local cases of the Omicron COVID-19 variant. Reiterating that he wanted the trial to go forward as soon as practicable, Mr. White acknowledged that a *short* continuance would be prudent since it was not in his interest for a trial to be undertaken in fits and starts due to the likelihood of disruption from participants contracting or being exposed to COVID-19 in the anticipated Omicron surge immediately after the holidays. (Dkt. 357.) Mr. White did not request or concur in any request for a *lengthy* continuance – he concurred only in a "short continuance…until the holiday-generated surge recedes."

11. On February 14, 2022, the Court continued the trial for almost 5 months, to May 31, 2022. (Dkt. 368.)

12. Mr. White was prepared to go to trial on May 31, 2022, other than agreeing that the trial should be continued *briefly* in anticipation of the Supreme Court's decision in *Ruan v. United States*, No. 20-1410. The question at issue in *Ruan* was the good faith standard in physician prescribing cases – a standard that would directly impact Mr. White's defense and the jury instructions to be proposed in this case. The case was argued before the Supreme Court in March 2022 and a decision was expected before the Court recessed at the end of June. Given the proximity of the May 31 trial date to the expected issuance of the *Ruan* decision, Mr. White took the position (articulated at the May 12, 2022 status conference) that it would be prudent to postpone the trial *briefly* in hopes of clarification of the good faith standard. Mr. White

submitted that a continuance of no more than 30 days would be sufficient for this purpose. (Defendant Mitchell White's Motion to Suspend Trial Date, Dkt. 410 at p. 4.)

13. The *Ruan* decision was, in fact, issued by the Supreme Court on June 27, 2022 – within the short continuance period in which Mr. White concurred.

14. In the three weeks before the May 31 trial date, however – *on the eve of a trial date almost 3 ½ years after indictment* – the government produced an avalanche of discovery. *See* Letters from M. Costello to Defense Counsel dated April 29, 2022; May 4, 2022; and May 10, 2022. (Exhibit B to Defendant Mitchell White's Motion to Suspend Trial Date (Dkt. 410), filed under seal). This discovery included information about previously undisclosed undercover operations, 60 hours of video footage, 16 hours of audio tape, patient files, search warrant photographs, interview reports and other investigatory records.

15. Based on the government's own descriptions of the discovery material, most of it had *not* been recently acquired by the government, [4] nor was much of it otherwise appropriate for late production. Some of it is material to preparation of a defense, and therefore should have been previously produced under Fed.R.Crim.P. 16(a)(1)(E)(i) or – depending on the nature of the materials – *Brady v. Maryland*. The government acknowledged that some of it may be used by

---

[4] In one of its cover letters, the government described the newly produced surveillance footage and recordings as having been "recently received from the FBI." *See* Exhibit B to Defendant Mitchell White's Motion to Suspend Trial Date (Dkt. 410) (filed under seal) at p. 2. Possession by the FBI – an agency intimately involved in the investigation and prosecution of this case – does not excuse the United States Attorney's Office from producing it. The government has a duty to disclose all information "actually or constructively in its possession or accessible to it." *United States v. Perdomo*, 920 F.2d 967, 970 (3d Cir. 1991). A "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989). *See also United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993)(defining constructive possession of the prosecutor as including material he should have known was in existence).

the government at trial; it therefore should have been produced previously under Fed.R.Crim.P 16(a)(1)(E)(ii). The government disclosed that one of its cooperating witnesses participated in other investigations, which is *Brady/Giglio* material, but declined to make further disclosure concerning this witness.

16. Perhaps most egregiously as to Mr. White, the May 2022 late discovery contained clearly exculpatory evidence that should have been produced over two years ago earlier under *Brady v. Maryland*. Interview reports dated March 2020 – *over two years prior to production* -- revealed that the government interviewed a former AUC patient *three times* that month. In each of these interviews, the witness told the government that at her last AUC visit she was seen by Mr. White, who counseled her to get off pain medications (which she then did). This is clearly exculpatory material in the face of charges that Mr. White was complicit in operating an illegal drug house and that he conspired to distribute drugs illegally.

17. The relevance of these statements could hardly have been missed by the government -- the interviews occurred while Mr. White was under indictment and facing an imminent April 20, 2020 trial date. Disturbingly, the case almost proceeded to trial in January 2022 without these reports being turned over to the defense, and the government twice let Mr. White prepare for trial without the requisite *Brady* disclosure.

18. Having discovered these reports amongst the reams of new discovery little more than a week before the scheduled May 31 trial date, defense counsel had inadequate time to follow up on them. Nor did counsel have sufficient time to review and search the rest of the voluminous new discovery for other *Brady* and *Giglio* material, or to review and analyze evidence contained in the late production that the government will likely use at trial. In short, the government's grossly tardy production of discovery and *Brady* material undermined Mr.

White's Fifth and Sixth Amendment rights to due process, to confront witnesses against him, and to the effective assistance of counsel who has reviewed, analyzed and utilized discovery and *Brady* material.[5]

19. On June 3, 2022 the Court continued the trial date to January 9, 2023. (Dkt. 418).

20. However, the delay necessitated by the government's long-overdue discovery production, in conjunction with its chronic discovery failures in this case, impermissibly violates Mr. White's constitutional and statutory rights to a Speedy Trial.

21. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S.Const. amend. VI.

22. To determine whether the constitutional right to a speedy trial has been violated, courts consider the following four factors originally set forth in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972): (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant asserted his speedy trial right; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant.

23. As discussed in the accompanying Memorandum, when the *Barker* factors are applied to the facts of this case, it is clear that Mr. White's constitutional speedy trial right has been and is being violated.

---

[5] The government's pronouncement at the May 12, 2022 status hearing that *it* was not requesting a continuance of the May 31, 2022 trial date was as audacious as its failure timely to disclose *Brady* and *Giglio* material. The government's position blatantly disregarded defendant's constitutional right to effective assistance of counsel at trial – including the review and utilization of discovery significant to the defense of the case.

24. The Speedy Trial Act – which is separate and apart from the constitutional right to a speedy trial  -- requires that a defendant be brought to trial within 70 days of initial appearance, with certain specified exclusions.  *See* 18 U.S.C. §3161.

25. Mr. White asserted his constitutional and statutory Speedy Trial rights at the May 12, 2022 status conference, along with his rights to due process and effective assistance of counsel.  He again asserted these rights, including his Speedy Trial rights, in his May 25, 2022 Motion to Suspend Trial Date (Dkt. 410).  When moving to suspend the March 31, 2022 trial date, Mr. White made clear that he was not waiving his rights to a speedy trial.  *See* Motion to Suspend,  Dkt. 410.  Mr. White's position was – and is -- that it is now impossible for his speedy trial rights to be met fairly and co-extensively with his constitutional and statutory rights to receive, review and utilize discovery and *Brady* materials, and that dismissal of the charges against him is the only constitutionally acceptable option.

26. As to his statutory speedy trial rights, Mr. White objected (*see* Dkt. 410 at p. 8) – and continues to object  -  to excluding any continuance under the statutory speedy trial clock beyond the 30-day wait for the *Ruan* decision.  The government's chronic lack of diligent preparation in this case, including repeatedly failing to meet its obligations to the defense, caused the need for any continuance beyond the issuance of the *Ruan* decision.

27. Therefore, there is no permissible basis for an "ends of justice" continuance dating from May 31, other than the 30-day wait for the *Ruan* decision.  *See* 18 U.S.C. §3161(h)(7)(C) ("No ['ends of justice'] continuance…shall be granted because of general congestion of the court's calendar, or lack of diligent preparation…on the part of the attorney for the Government.").  Without the "ends of justice" continuance, the Speedy Trial Act has been and will be violated.

9

28. Rather than holding a trial that fundamentally violates his constitutional and statutory Speedy Trial rights, Mr. White submits that the charges against him should be dismissed. Due to the government's actions (or, more accurately, the government's long-term *inaction*) in producing required discovery, it is impossible to satisfy Mr. White's constitutional rights to due process and effective assistance of counsel while also satisfying his constitutional and statutory rights to a speedy trial.

29. Alternatively, the charges should be dismissed under Federal Rule of Criminal Procedure 48(b), which provides for dismissal when there has been unnecessary delay in bringing a defendant to trial. The government had more than sufficient time during the COVID delays to ensure that all discovery and *Brady* materials had been produced. Further delay caused by the government's discovery breaches was clearly unnecessary.

30. If dismissal is not granted, the Court is authorized to impose sanctions on the government for violation of its discovery obligations. *See United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009); *see also United States v. Shulick*, 994 F.3d 123, 133 (3d Cir. 2021)(noting with approval the district court's sanction of ordering that the government could not utilize late-produced discovery at trial). The Court should preclude the government from utilizing against defendant the late discovery produced in May 2022 as well as the defendant's proffer statement for which the government failed to retain agent rough notes and then failed for over two years to disclose this breach of responsibility.

*\*\*\**

For all these reasons, and those stated in the accompanying Memorandum in Support, defendant respectfully submits that hiss motion should be granted, and all charges against him dismissed with prejudice.

Respectfully submitted,

_____
ANN C. FLANNERY
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2900
Philadelphia, PA 19103
215.636.9002
*acf@annflannerylaw.com*

Attorney for Mitchell White

Date: October 21, 2022

11

**CERTIFICATE OF SERVICE**

I, Ann C. Flannery, counsel for defendant Mitchell White, hereby certify that on this 21st day of October, 2022, I caused a true and correct copy of the foregoing DEFENDANT MITCHELL WHITE'S MOTION TO DISMISS THE CHARGES AGAINST HIM DUE TO VIOLATION OF HIS SPEEDY TRIAL RIGHTS to be served by ECF upon all counsel of record, including the following:

>Christopher Parisi
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106-4476
>Christopher.Parisi@usdoj.gov
>
>Mary Kay Costello
>U.S. Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA  19106
>Marykay.Costello@usdoj.gov

*/s/ Ann C. Flannery*

ANN C. FLANNERY
Law Offices of Ann C. Flannery
1835 Market Street, Suite 2900
Philadelphia, PA 19103
215.636.9002
acf@annflannerylaw.com