# Exhibit B

DECLARATION OF ANN C. FLANNERY

I, Ann C. Flannery, under penalties of perjury, do depose and state:

1. I was appointed to represent Mitchell White on September 12, 2019.

2. My case notes reflect that I spoke to AUSA Jason Bologna on September 13, 2019 and requested the agents' rough notes from Mr. White's proffers, and that Mr. Bologna agreed to check with the agents.

3. My case notes reflect that on November 25, 2019 I again asked AUSA Jason Bologna for the rough notes of Mr. White's proffer.

4. On March 17, 2020, in an email to AUSA Jason Bologna listing seven outstanding discovery requests, I again requested the rough notes of Mr. White's proffers. Mr. Bologna and I conferred regarding the discovery requests in advance of a status hearing on that date (which included the subject of discovery), and he said that he was "checking" on the rough notes.

5. On June 10, 2021, in a letter to AUSA Jason Bologna listing 12 discovery requests, I again requested the rough notes of Mr. White's proffer interviews.

6. Having received no response to the June 10, 2021 letter, on July 20, 2021 I sent an email to Mr. Bologna attaching the June 10, 2021 letter and reminding him of the 12 discovery requests, including the request for the rough notes of Mr. White's proffer interviews.

7. My case notes reflect that on August 2, 2021, I had a phone conversation with Mr. Bologna concerning the 12 discovery requests in my June 10, 2021 letter, including the request for the rough notes of Mr. White's proffer interviews. Mr. Bologna advised that he "thought" the notes were taken on a computer and converted into a report (and not saved), but he would check.

8. On August 4, 2021, Mr. Bologna sent me an email concerning the 12 discovery requests from my June 10, 2021 letter, in which he stated in relevant part:

> I have found an email between us regarding the Mitchell White proffers. The email was dated 10/1/20, and it discusses notes, but the email does not reflect the issue we discussed on the phone on August 2, 2021 (i.e., my recollection the agent took notes on his computer, and then converted those notes into the DEA-6 statement). I will keep investigating my notes, and speak to the agent, to confirm my recollection. I anticipate having a more complete answer in the near future.

9. On December 15, 2021, I emailed Mr. Bologna, reminding him of my request for the rough notes of Mr. White's proffers, and quoting the portion of his August 4, 2021 email

set forth in ¶8 above. Noting that there were four agents present at the proffer, I then asked him to either "provide the notes or confirm that there are none and why?"

10. On December 21, 2021, I emailed Mr. Bologna with two discovery requests, including "Rough notes of the Mitchell White proffer on 5/1/17, or confirmation that none of the four agents present have retained notes."

11. On January 18, 2022, I emailed Mr. Bologna again, reminding him that I had been seeking the rough notes of the agent reports "[s]ince at least October 2020."

12. Mr. Bologna responded on January 19, 2022 that he was "working to resolve" the issue.

13. On January 31, 2022, Mr. Bologna sent me an email confirming that the agent "took notes on his computer" and "used those notes to write up the DEA-6." He further stated that "there are no computer generated notes because they have been converted in the DEA-6." He stated that no other agents took notes.

14. I had (and have) good faith reason to believe that the rough notes differed from the final report, and therefore constituted *Brady/Giglio* material. In particular, an inculpatory statement that appears in the final report is inconsistent with other statements in the report, and counsel who represented Mr. White at the proffer advised me that the statement in question does not appear in his rough notes.

_____
Ann C. Flannery

Dated: 10/21/22